### ALCOLAC INC.
v.
### CALIFORNIA UNION INSURANCE COMPANY.

Civ. No. S 88–3776.

United States District Court,
D. Maryland.

July 21, 1989.

H. Gregory Skidmore, Cumberland, Md., Peter F. Axelrad, Thomas M. Wood, IV, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for plaintiff.

Dennis M. Flannery, Stephen H. Sachs, John R. Read, W. Scott Blackmer, Wilmer, Cutler & Pickering, Washington, D.C., for defendant.

### MEMORANDUM.

SMALKIN, District Judge.

This case is before the Court on the defendant's motion for summary judgment, which will be granted. The matter has been fully briefed, and there is no need for an oral hearing. Local Rule 105.6, D.Md.

This is a declaratory judgment action, in which the plaintiff seeks a declaration that it is covered under an excess insurance

certificate issued by defendant California Union Insurance Company (Cal Union) for the period January 1, 1980 to January 1, 1981. Coverage is sought for acts by Alcolac which led to a substantial award of damages against it in litigation recently concluded in the Missouri state courts. The opinion of the Missouri appellate court in the matter occupies over two hundred pages in a recent volume of the Southwestern Reports. *Elam v. Alcolac, Inc.,* 765 S.W.2d 42 (Mo.App.1988), *petition for cert. filed,* 57 U.S.L.W. 3828 (U.S. June 8, 1989) (No. 88–1992). It would be fruitless at this point to restate the facts as set forth in the opinion of the trial and appellate courts in the *Elam* litigation. It suffices to say that there can be *no* dispute that the damages awarded in *Elam* stemmed from "the discharge, dispersal, release or escape of smoke vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids of [sic] gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse of [sic] body or [sic] water," within the relevant language of an absolute pollution exclusion which the plaintiff says is not, but which the defendant says is, a valid part of the Cal Union policy.[1] According to the testimony as summarized in the reported appellate opinion, the *Elam* plaintiffs' damages flowed from repeated gross violations of standard and/or safe operating procedures regarding the handling of toxic substances, which contaminated the environment adja-

cent to the Alcolac Sedalia plant, near which all of the *Elam* plaintiffs lived.[2] Recognizing that the judgment in the underlying case is conclusive on the facts relevant to this case,[3] there can be no genuine dispute of material fact in this case on the issue that the damages suffered by the *Elam* plaintiffs stemmed from events within the ambit of the absolute pollution exclusion. The only unresolved questions pertinent to the instant suit are questions that deal with the legal effect and validity of that exclusion.

The parties seem to agree that the substantive law of Maryland should apply to interpretation of the insurance policies directly pertinent to the instant case. Maryland law, unlike that of many other jurisdictions, is not hostile to insurers in the initial judicial construction of policy provisions. Rather, the courts in Maryland are instructed to construe the policy so as to ascertain the intent of the contracting parties, *Mateer v. Reliance Insurance Co.,* 247 Md. 643, 648, 233 A.2d 797, 800 (1967), rather than to comb it for ambiguities. Of course, if a *true* ambiguity is found, then it is generally to be resolved against the insurer. *Id.*

■ With these premises in mind, the Court determines that there is no genuine issue of material fact in dispute and that the defendant is clearly entitled to summary judgment. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106

1. Because there are common legal issues concerning the absolute pollution exclusion in this case and in *Alcolac v. St. Paul Fire & Marine Insurance Co.,* 716 F.Supp. 1541, the Court has considered the arguments raised by the plaintiff in opposition to Canadian Universal's motion for summary judgment in that case (Opposition Memorandum at 38–41), as if fully applicable to this case. None of them is persuasive, particularly the plaintiff's contention that the *Elam* plaintiffs' injuries were attributable to some insured event or events not falling within the exclusive clause's definition of pollution. (*Id.* at 40).

2. Although perhaps relevant in the other declaratory judgment litigation brought by Alcolac, *see supra* note 1, the question of whether the *Elam* plaintiffs' damages were "accidental" in origin is irrelevant as regards the present case because of the absolute nature of the pollution

exclusion at issue here; other policies had only a qualified pollution exclusion.

3. The effect of the *Elam* judgment is derived from Missouri law. 28 U.S.C. § 1738 (1982); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Under Missouri law, Alcolac is collaterally estopped in this coverage suit, by the outcome of the underlying suit, from relitigating facts relevant to whether it committed acts within the absolute pollution exclusion. *See St. Paul Fire & Marine Insurance Co. v. Starr,* 651 S.W.2d 517, 520 (Mo.App.1983). *See also Bresnahan v. May Department Stores Co.,* 726 S.W.2d 327, 329–30 (Mo.1987) (en banc); *Steyer v. Westvaco Corp.,* 450 F.Supp. 384, 397 (D.Md.1978). The Court, of course, reserves decision on the scope of any estoppel relevant to the qualified pollution exclusions in other policies at issue in Civil No. S 84–4154. *See supra* notes 1–2.

S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court notes the plaintiff's strenuously argued position that it has not been afforded the meaningful opportunity for discovery contemplated by Fed.R.Civ.P. 56(f) and mentioned by the Supreme Court in *Celotex*, 477 U.S. at 326, 106 S.Ct. at 2554, but this Court disagrees. There is no need to engage in discovery in a coverage suit when the relevant policies are either in the insured's possession or were directed by the Court to be turned over to the insured, at the Court's express instruction to counsel, in aid of the insured's opposition to the insurer's motion. The Court will not allow the taking of depositions or other discovery in an attempt to generate ambiguity where none exists. The pertinent policy provisions have been laid on the table, and there is simply no factual issue that needs to be explored in discovery in order for the Court to make its decision on the legal questions relevant to this suit. Therefore, the Court concludes that the record is sufficiently developed to enable it to consider this motion on the merits, without the need of further discovery.[4]

■ There is, in this Court's judgment, no ambiguity at all in the Cal Union policy's reference to the Canadian Universal policy as the principal insurance which the Cal Union policy follows. (It is the Canadian Universal policy which actually embodies the absolute pollution exclusion relied upon by Cal Union in this lawsuit.) The plaintiff's position on the claimed ambiguity seems to be generated by the fact that the Canadian Universal policy was not a basic casualty/liability policy, but was, itself, an excess policy, like the Cal Union policy in suit here. There is no reason, as a matter of law, why one excess policy cannot refer to another excess policy as the principal insurance for the purpose of incorporating the terms, nor is there any reason why a second-tier excess policy cannot refer to another excess policy as the principal insurance for the purpose of in-

corporating its terms and conditions, and other policy provisions, of the first excess policy as the terms, conditions, and provisions the second will follow. Indeed, just such a situation was present in a case recently decided in this Court. *See Highlands Insurance Co. v. Gerber Products Co.*, 702 F.Supp. 109, 113 (D.Md.1988). This Court can find no requirement in law or in the language of any of the policies that the principal insurance referred to in the Cal Union policy must have been a basic casualty liability policy, rather than another excess policy. As the defendant points out (Reply Memorandum at 9–10), a layered approach to excess insurance is common in commercial practice. Consequently, the Court concludes that the Cal Union policy incorporates the terms, conditions, and provisions of the Canadian Universal umbrella policy underlying it, and that there is no ambiguity or dispute of fact on this point.

■ The next question is whether the absolute pollution exclusion endorsement in the Canadian Universal policy is void for want of a separate signature on the endorsement. Given that it was the duty of the insured to provide the terms of the underlying policy to Cal Union, making Alcolac the source of the endorsement copy accompanying the defendant's present motion, coupled with the undisputed fact that the endorsement was incorporated in the underlying Canadian Universal policy when issued, the Court is of the opinion that the separate signature requirement on the face of the endorsement is not an impediment to the effectiveness of that part of the Canadian Universal policy, either on its own or as incorporated in the Cal Union coverage. Although there is apparently no Maryland case on this point, cases from other jurisdictions have recognized the general rule that, when the master policy is properly delivered incorporating all endorsements, the endorsements need not have been separately signed by the insurer. *See Greenway v. North Carolina Farm Bureau Mu-*

---

**4.** Contrary to the plaintiff's position (Opposition Memorandum at 6), the Court is convinced that the affidavit and papers submitted by Cal Union accompanying its motion are proper supporting materials under Fed.R.Civ.P. 56(e).

*tual Insurance Co.*, 35 N.C.App. 308, 241 S.E.2d 339, 342 (1978); *Dunn v. Traders & General Insurance Co.*, 287 S.W.2d 682, 687 (Tex.Civ.App.1956). *See also* 1 *Couch on Insurance 2d* §§ 3:24, 4:35 (1984). Here, reference to Canadian Universal Policy NCUL3182 (submitted by Canadian Universal in support its summary judgment motion in Civil No. S 84–4154) shows that the absolute pollution exclusion endorsement, Endorsement # 1, was specifically incorporated in the policy from its inception. *See* Appendix A hereto. The Court also perceives no issue in dispute as to the validity of the exclusion under Maryland insurance regulations. Cal Union was a surplus lines carrier not admitted under the jurisdiction of the Maryland Insurance Commissioner, and any regulatory prohibition upon the inclusion of an absolute pollution exclusion clause in a policy regulated by the Maryland Insurance Commissioner is not an issue in this case.

■ Finally, the only remaining question is whether the absolute pollution exclusion ought to be given a reading that gives it effect so as to deny coverage for the *Elam* damages. The Court is of the opinion that it should. There is no ambiguity in the clause, it is clear on its face, and the damages in the underlying litigation unquestionably flowed from events within its ambit. This pollution exclusion is just what it purports to be—absolute—and the Court perceives no reason why Cal Union should be denied the benefit of its bargain with Alcolac, as reflected in the insurance contract. *See Guilford Industries, Inc. v. Liberty Mutual Insurance Co.*, 688 F.Supp. 792 (D.Me.1988). *See also Independent Petrochemical Corp. v. Action Casualty & Surety Co.*, No. 83–3347, slip op. at 181 (D.D.C. September 2, 1988). Alcolac's arguments that it expected that all personal injury or property damages "inadvertently" caused by its Sedalia plant operations would be covered by the Canadian Universal and Cal Union policies cannot generate coverage where none exists under the parties' contract of insurance.

In short, this Court is convinced that no amount of further discovery or parsing of the insurance policies at issue will illuminate the fundamental issues relevant to this case, which are plain and clearly ripe for decision, and which result in this Court being of the opinion that the defendant's motion for summary judgment should be granted. Accordingly, an order will be entered separately.*

---

* As a wholly separate and independent reason for its decision in favor of the defendant herein, the Court notes that neither the basic liability policy (St. Paul) nor the other excess policy (Canadian Universal) provides coverage for the damages in *Elam*, for reasons set forth in this Court's Memorandum Opinion in *Alcolac v. St. Paul Fire & Marine Insurance Co.*, 716 F.Supp. 1541, issued this date.